# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1536 consolidated with CW03-1261

**SUTTON STEEL & SUPPLY, INC., ET AL.**

**VERSUS**

**BELLSOUTH MOBILITY, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NUMBER 91421
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLIE COLOMBARO WOODARD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billie Colombaro Woodard, and Michael G. Sullivan, Judges.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**

Jonathan B. Andry
The Andry Law Firm, L.L.C.
610 Baronne Street
New Orleans, Louisiana 70113
(504) 586-8899
Counsel for Plaintiff/Respondent:
    Kate Davis
    Sutton Steel & Supply, Inc.
    Rachel Maddox

Lionel H. Sutton, III
The Sutton Law Firm
610 Baronne Street
New Orleans, Louisiana 70113
(504) 586-8899
Counsel for Plaintiffs/Respondents:
    Kate Davis
    Sutton Steel & Supply, Inc.
    Rachel Maddox

Bob F. Wright
James P. Roy
Domengeaux & Wright
556 Jefferson Street, Suite 500
Lafayette, LA 70501
(337) 233-3033
Counsel for Plaintiffs/Respondents:
    Sutton Steel & Supply, Inc.
    Rachel Maddox
    Kate Davis

Peter Butler, Sr.
Peter Butler, Jr.
Breazeale, Sachse & Wilson
Post Office Box 3197
Baton Rouge, Louisiana 70821
(225) 987-4000
Counsel for Plaintiffs/Respondents:
    Sutton Steel & Supply, Inc.
    Rachel Maddox
    Kate Davis

Gary J. Russo
Camille Bienvenu Poché
Perret, Doise, ALPC
600 Jefferson Street, Suite 1200
Lafayette, LA 70502-3408
(337) 262-9000
Counsel for Defendant/Applicant:
     BellSouth Mobility, Inc.

Seamus C. Duffy
William M. Connolly
Mary Catherine Roper
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania  19103-6996
(610) 988-2700
Counsel for Defendant/Applicant:
     BellSouth Mobility, Inc.

Dr. Saul Litvinoff
Boyd Professor of Law
Paul M. Hebert Law Center
Louisiana State University
Baton Rouge, Louisiana 70803-1000
(225) 388-1126
Counsel for Defendant/Applicant:
     BellSouth Mobility, Inc.

Harry T. Lemmon
650 Poydras Street, Suite 2335
New Orleans, Louisiana 70130
(504) 581-5644
Counsel for Defendant/Applicant:
     BellSouth Mobility, Inc.

Edward H. Bergin
Jones, Walker, Waechter, Poitevent
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana70170-5100
(504) 582-8000
Counsel for Defendant/Applicant:
     Nextel Operations, Inc.

Gregory G. Duplantis
Gordon , Arata, McCollum, Duplantis
& Eagan, L.L.P.
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
(337) 582-1111
Counsel for Defendant/Applicant:
     Nextel Operations, Inc.

Alberta Louise Adams
Krebs, Farley & Pelleteri, L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 299-3570
Counsel for Defendant/Applicant:
     Nextel Operations, Inc.

WOODARD, Judge.

Defendants appeal the trial court's decision to certify a class of Plaintiffs as well as its ruling striking certain exhibits that Defendants offered. We affirm the trial court's judgment and remand the matter to the trial court.

* * * * *

This case is before us in the posture of a consolidated writ application and an appeal for review of the trial court's judgment certifying a class and its ruling to strike certain exhibits. The underlying claims involve BellSouth Mobility's (BellSouth) performance under standard form contracts for wireless telephone services. Specifically, BellSouth charged the Plaintiffs and other customers for the calls they made and received by rounding up the last minute of each call. The named Plaintiffs filed suit against BellSouth for breaching its contracts with them. They also sought to certify a class of similarly situated persons in the states of Louisiana, Florida, Mississippi, Alabama, Georgia, Tennessee, Kentucky, North Carolina, and South Carolina.

While the standard form contracts are not identical for each customer, the provisions at issue are substantially similar. Namely, the face of the contracts provide for a certain number of "air time minutes included per month." The Plaintiffs allege that BellSouth breached its promise to provide them with the stated amount of minutes. There is a provision on the reverse of each of the standard contracts which purportedly explains BellSouth's billing practice of rounding up. BellSouth argues that this provision simply defines or clarifies what is meant by "air time minutes." In support of this contention, it offered affidavits of some of its customers in which each stated that he or she understood that BellSouth rounded up the last minute of each call and that he or she consented to this billing method. It also offered certain advertisements and various media which explained its practice of "rounding."

The trial court granted the Plaintiffs' motion to strike these exhibits because neither parole nor extrinsic evidence is admissible absent a finding that the contract is ambiguous. The trial court agreed that BellSouth's exhibits were not admissible at this stage of the proceedings. The trial court also granted the Plaintiffs' motion to certify the action as a class action. BellSouth appeals both of these rulings.

1

* * * * *

**STANDARD OF REVIEW**

A certification determination requires an analysis of the particular facts and circumstances of each case, and the trial court has broad discretion in deciding whether or not to certify a class.[1] Moreover, it has discretion to amend or reverse its decision at any time.[2] We may not disturb its decision unless it is manifestly erroneous.[3] Furthermore, "if there is to be an error made, it should be in favor and not against the maintenance of the class action."[4]

**CLASS ACTION PREREQUISITES**

One or more persons can sue and represent a class of other similarly situated persons only if certain prerequisites are met.[5] Louisiana Code of Civil Procedure Article 591(A) delineates these prerequisites. First, the class must be so numerous that joinder of all members as individual named parties be "impracticable." This prerequisite requires an examination of the specific facts of each case and imposes no absolute limitations (numerosity).[6] The Plaintiffs must also show that there are questions of law or fact common to the class (commonality).[7] The third factor, typicality, requires the representatives' claims or defenses to be typical of those of the class as a whole, such that in representing their own interest, they represent the interest of the class members (typicality).[8] Another factor, adequacy of

---

[1]*Martello v. City of Ferriday*, 01-1240 (La.App. 3 Cir. 3/6/02), 813 So.2d 467, *writs denied*, 02-1002, 02-990, 02-1514 (La. 6/7/02), 818 So.2d 769, 770, 771.

[2]La.Code Civ.P. art. 592(A)(3)(c).

[3]*Martello*, 813 So.2d 467.

[4]*McCastle v. Rollins Envtl. Serv. of La., Inc.*, 456 So.2d 612, 620 (La.1984).

[5]La.Code Civ.P. art. 591.

[6]La.Code Civ.P. art. 591(A)(1).

[7]La.Code Civ.P. art. 591(A)(2).

[8]La.Code Civ.P. art. 591(A)(3).

representation, ensures that the named representative(s) will fairly and adequately represent the class.[9]  Finally, there must be an objectively definable class.[10]

In addition to these prerequisites under La.Code Civ.P. art. 591(A), the action must fit into at least one of the categories listed in La.Code Civ.P. art. 591(B).  The relevant category in the instant action is section (B)(3), requiring that common questions of law or fact predominate over questions that would be specific to each individual, and that a class action is a superior adjudicatory method.

*Commonality*

"The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members."[11]  Certainly, the question of whether BellSouth breached its promise to the Plaintiffs is one that is common to all class members. Notwithstanding, in the class action context, commonality means not only "common question" but also "common answer."  Specifically, to meet the test of commonality, there must be a common question which when answered for one plaintiff will be answered for all plaintiffs.[12]  We find that the Plaintiffs' claims meet the test of commonality.

Specifically, the common question is whether BellSouth breached its promise to the Plaintiffs under the contracts' terms.  The answer to this question depends on what BellSouth's promise consisted of—to provide the Plaintiffs with the stated number of "whole minutes" or with the stated number of "rounded minutes."  There is no dispute that BellSouth followed a common course of action by giving each customer the stated number of "rounded minutes."  Thus, once the trial court determines whether BellSouth's contract promises the class members "whole minutes"

---

[9]La.Code Civ.P. art. 591(A)(4).

[10]La.Code Civ.P. art. 591(A)(5).

[11]*Duhe v. Texaco, Inc.*, 99-2002, p. 12 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078, *writ denied*, 01-637 (La. 4/27/01), 791 So.2d 637 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5 Cir.1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1169 (2000)).

[12]*Duhe,* 779 So.2d 1070.

or "rounded minutes," then the question of whether BellSouth breached this promise, when answered for one class member, will be answered for all.

*Typicality*

This prerequisite is satisfied if the class representatives' claims and the putative class members' claims arise out of the same course of conduct and are based on the same legal theory.[13]  In the instant case, all claims are based on a breach of contract theory and the alleged breach results from BellSouth's billing method, which is a uniform course of conduct.  Furthermore, the contracts at issue involve two types of rate plans.  Specifically, some of the contracts provide that the customer will be charged a certain amount per minute for each minute of air time, while others provide that the customer will pay a certain amount per month for a stated amount of minutes and will incur additional charges on a per-minute basis only if the customer exceeds the stated number of minutes during the particular billing cycle.  One of the class representatives had service under both types of plans.  Accordingly, the class representatives represent a cross-section of the putative class members.

*Adequacy of Representation*

The trial court found that the class representatives and their attorneys have undertaken extensive discovery during a four-year pursuit of these claims, and will adequately protect the interest of the class.  We must agree.

*Numerosity and Class Definition*

The final two prerequisites are that the class may be defined objectively and that the number of class members is so great that joinder is impracticable.  In the instant case, the trial court defined the class as follows:

> Those natural persons, business and/or related entities who entered into contracts for a specific amount of air time for a certain amount per minute for cellular service or wireless telephone services provided by Defendant BellSouth Mobility in Louisiana, Florida, Mississippi, Alabama, Georgia, Tennessee, Kentucky, North Carolina, and South Carolina.

---

[13]*Id.*

It excluded from the class certain persons associated with BellSouth as well as any trial judge presiding over the case.

We find that the class definition is ambiguous and inadequate. Specifically, it covers only one of the two rate plans involved. Those customers who had rate plans that provide for a certain amount of minutes for a certain amount per month and only charge on a per-minute basis if the customer exceeds the stated number of minutes are not covered in the definition. However, it is clear from the trial court's written reasons for judgment that it intended to include in the class "persons who solicited or were solicited for services by BellSouth Mobility, [who] signed standard form contracts in which they were to receive services from BellSouth Mobility for so many minutes per month for a designated fee."

Additionally, the trial court does not provide any time frame for identifying members of the class. Notwithstanding, "because of a trial court's authority to redefine the class before a decision on the merits of the common issues, appellate courts often allow certification despite a finding that the definition is inadequate for one reason or another."[14] Thus, the trial court may address these inadequacies on remand.

Furthermore, incorporating a time frame into the class definition will not affect the numerosity requirement. The trial court found that "there are somewhere between two and four million such customers with standard from contracts for air time in the class area." Thus, joinder would be impractical even for a small percentage of this number, and numerosity is therefore met.

## PREDOMINANCE AND SUPERIORITY

Louisiana Code of Civil Procedure Article 591(B)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

BellSouth makes numerous arguments concerning the need for individualized inquiries to determine whether each customer *consented* to BellSouth's rounding billing method. It argues that these arguments are appropriate at this stage of the proceedings because of written reasons that the trial court gave when it denied

---

[14]*Id*. at 1080.

5

BellSouth's motion for summary judgment a few months before class certification. Specifically, the trial court denied BellSouth's summary judgment motion, finding that there was an internal conflict in the two provisions at issue. Thus, BellSouth contends that the trial court implicitly found the contract to be ambiguous. Accordingly, BellSouth centers its arguments against certification on the premise that the trial court has declared the contract to be ambiguous. However, BellSouth's reasoning is flawed.

To address BellSouth's arguments, we would have to agree with BellSouth's interpretation that the trial court's written reasons for denying summary judgment, a ruling that is not before us, imply that it found the contract to be ambiguous and to review whether it is in fact ambiguous. However, it is impossible for us to conduct such an analysis without making decisions on the merits of this case. Even though ambiguity is a question of law, we may not consider the merits of the dispute in this appeal. As this court has stated:

> Another basic principle is that, for purposes of certification, a court is not permitted to review the claims in a case on their substantive merit.[15] . . . A class action is no more than a procedural device; it confers no substantive rights. . . . The only issue to be considered by the trial court in ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of a class action the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits.[16]

The propriety of the trial court's denial of summary judgment is not before this court. Therefore, neither are its reasons. To entertain its reasons for denying summary judgment, as BellSouth urges, is tantamount to reviewing the judgment, itself. Furthermore, this court, as well as the supreme court, has already refused to

---

[15]*Clark v. Trus Joist MacMillian*, 02-676, p. 6 (La.App. 3 Cir. 12/27/02), 836 So.2d 454, 460, *writ denied*, 03-275 (La. 4/21/03), 841 So.2d 793 (quoting *Duhe*, 779 So.2d at 1078).

[16]*Id.* (quoting *Andry v. Murphy Oil, U.S.A., Co.*, 97-793 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129).

exercise supervisory jurisdiction over the denial of summary judgment.[17]  Thus, we will consider only the trial court's reasons for certifying the class.

In its written reasons for judgment certifying this class, the trial court simply stated:

> The claims arise out of a single type of contract.  This is the standard form contract employed by BellSouth Mobility in contracting with customers.  BellSouth uses a common contract form in the states in its service area.  All of those contracts in the putative class specify a number of air time minutes and the price to be charged for such minutes.  This is standard in all of BellSouth Mobility's form contracts.  The breach of contract allegedly arises when BellSouth rounded up to the next full minute instead of providing the amount of full minutes that were contracted for.  Thus, clearly there is a common question of law and fact as to each of these contracts and to the breach of each of these contracts.

Accordingly, the trial court found that common questions predominate in this litigation.  It further supported its decision that common issues predominate by recognizing that, even though the amount of damages may vary, the method of calculating damages will be uniform.  The trial court also found that a class action was a superior method to adjudicate Plaintiffs' claims, particularly, in light of the impracticability that any one class member has a claim large enough to justify pursuing it individually.

BellSouth avers that variances in state law governing unconscionability create an impediment to class action treatment, and points out that it is Plaintiffs' burden to prove that each state's legal standards are not incompatible.  However, as the Plaintiffs have not made any allegations of unconscionability, they need not address the legal standards governing it.  Furthermore, if the trial court chooses to employ such an analysis in order to analyze the contract, it has the discretion to create subclasses or to amend or restrict its definition of the class at anytime.[18]

---

[17]*See Sutton Steel & Supply, Inc. v. Bellsouth Mobility, Inc.,* 03-3445, 03-3446 (La. 2/20/04), 866 So.2d 830, 831.

[18]La.Code Civ.P. art. 592(D); La.Code Civ.P. art. 592(A)(3)(c).

Additionally, BellSouth argues that variances in state law governing the enforceability of the arbitration provisions in its contracts create an impediment to class certification. This court, in a previous appeal, has already declined to recognize the arbitration provisions in the Plaintiffs contracts.[19] Even assuming that the arbitration provisions are enforceable in one or more of the remaining eight states, this does not automatically render class action an inferior method of adjudicating the Plaintiffs' claims. The trial court has discretion to create subclasses based on the class members' resident states. Even assuming that the trial court would have to conduct more than one arbitrability analysis does not render a class action unmanageable *per se*, nor does it inevitably lead to a determination that common issues do not predominate in the entire action. Thus, we find that BellSouth's arbitrability argument is not a basis for finding an abuse of discretion in the trial court's decision to certify the class.

Furthermore, BellSouth submits that it has replaced the prior arbitration provisions which this court refused to recognize with an enforceable provision. However, if the trial court agrees, it can easily pretermit an analysis of the new arbitration provisions by restricting the class definition to those members whose contracts contained the previous arbitration provision or by taking this into consideration in its inclusion of a time frame into the class definition as directed above.

Finally, BellSouth argues that its affirmative defenses of waiver, ratification, and the voluntary payment doctrine depend on individual facts and circumstances, defeating commonality. However, while these affirmative defenses may limit or bar a class member's ultimate recovery, they will not affect the initial determination of BellSouth's liability. As such, they apply to the issue of the Plaintiffs' damages, not BellSouth's liability, and do not make class certification inappropriate under La.Code Civ.P. 591(C).[20] "The mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship *or that class members must*

---

[19]*Sutton's Steel & Supply, Inc. v. BellSouth Mobility, Inc.,* 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 01-152 (La. 3/16/01), 787 So.2d 316.

[20]*Doerr v. Mobil Oil Corp.*, 01-775 (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, *writs denied*, 02-920, 02-938 (La. 5/31/02), 817 So.2d 105, 106.

*individually prove their right to recover*, does not preclude class certification."[21] (Emphasis added.)   Furthermore, BellSouth's affirmative defense based on the file tariff doctrine is a class-wide defense and therefore does not defeat commonality.

Accordingly, we do not find that any of BellSouth's arguments demonstrate a basis for us to find that the trial court's decision to certify the class was manifestly erroneous.

**RULING TO STRIKE EXHIBITS**

BellSouth offered the affidavits of some of its customers who stated that they understood the whole-minute billing terms of the standard form contracts and that they consented to those terms.  It also offered evidence of various media which it asserted apprized its customers of its billing method.   The trial court excluded these exhibits in the certification hearing, and BellSouth argues that this constituted an impermissible ruling on the merits and that such decision directly conflicted with the trial court's prior findings as evidenced in its reasons for denying BellSouth's motion for summary judgment.  We disagree.

By excluding these exhibits at the initial stage of certification, the trial court *avoided* making an impermissible decision on the merits.  In the instant case, the Plaintiffs allege that the contract clearly and unambiguously promises a stated number of whole minutes to each customer, while the Defendants argue that the contract clearly and unambiguously promises each customer a stated number of rounded minutes.  When a contract is clear and unambiguous, inquiry into the parties' intent is confined to the four corners of the document itself.[22]  Thus, based on the allegations, parol and extrinsic evidence are not admissible.  Notwithstanding, BellSouth points out that in the trial court's written reasons denying its summary judgment motion, the trial court finds that there is an internal conflict in the contract.  It follows, BellSouth asserts, that the trial court has found the contract to be ambiguous.  Again, we are not at liberty to review the denial of summary judgment, and therefore decline to comment on BellSouth's interpretation of the ruling.

---

[21]*Duhe*,779 So.2d at 1085 (citing *Bartlett v. Browning-Ferris Indus. Chem. Serv., Inc.*, 99-494 (La.11/12/99), 759 So.2d 755).

[22]*See Norcen Explorer, Inc., v. Kavanagh*, 94-1058 (La.App. 3 Cir. 3/1/95), 651 So.2d 473.

## CONCLUSION

We find no manifest error in the trial court decision to certify the present action as a class action. We also agree that the trial court correctly refused to consider various BellSouth exhibits in making its certification ruling. Thus, we affirm the trial court's judgment, remand the case for further proceedings, and direct the trial court to address the inadequacies in its class definition. We cast the costs of this appeal on BellSouth.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**